Thank you, your honor. May it please the court, I'm John Cappell from the Department of Justice, representing the United States on this appeal. This court and then the Supreme Court have repeatedly held that under the Supremacy Clause, a state may not treat others any better than it treats the federal government. That, however, is precisely what the State of Washington has done here. HB 1723, which is an amendment to the Washington Industrial Insurance Act, singles out the United States, its facilities and contractors, for unique disfavored treatment. It thus runs afoul of the core principle of non-discrimination that is at the heart of the Doctrine of Intergovernmental Immunity rooted in the Supremacy Clause. There is no problem with states enacting generally applicable laws, laws that are neutral, that treat the United States like others, like all others. But that, of course, is not what HB 1723 does. What it does is it creates a presumption, an extremely burdensome presumption, with respect to all employees of contractors on the Hanford site. What it does not do, the Supreme Court, in the Goodyear Atomic case, dealt with this very federal statute that is at issue here, which is 40 U.S.C. 3172. And what it says, and I quote, was Congress intended Ohio's law and others of its ilk to apply to federal facilities to the same extent that they apply to private facilities. And it made a similar statement elsewhere, saying, quote, on its face, section 3172 compels the same workers' compensation award for an employee injured at a federally owned facility as the employee would receive if working for a wholly private facility. That, of course, is what HB 1723 does not do. It does not apply to differential treatment. And therefore, on its face, it is impermissible under the Supremacy Clause. Do you agree, Mr. Capell, that in light of the language and the statute, in the same way and to the same extent, if the United States were not involved, there would be no problem at all, right? Just not at all? In other order. If the, well, you're right. It's not, if Washington were simply regulating private parties, then that may well be permissible. The private parties would have their own arguments, but the non-discrimination principle would not be involved. Well, I guess what I struggle with, I look at the language of the statute, and it seems, on its face, to permit what's been done here. Now, you look at other statutes, like, for example, CERCLA. That expressly contains a non-discrimination rule that bars any treatment of the United States in a different way. But here, you have no such limit in the sense of provision. And I just, I'm struggling, either under Goodyear or any other case, why this should not be construed to be a waiver of intergovernmental immunity. Well, Your Honor, I would respectfully disagree because in our view, this CERCLA and the RCRA, they all contain a non-discrimination principle. In this statute, it comes from the language, in the same way and to the same extent, which is similar to the language in all of the other statutes. They all, there are variations in the language, but they all have that principle. Excuse me? But, well, you're talking about a principle. I'm asking for specific language, like CERCLA, that I just referred to contains specific language for foreign discrimination. I don't see that language in this statute. Where is it? Your Honor, it is there. This statute says that states may regulate the United States in the same way and to the same extent, as if they were entities wholly under state jurisdiction. But that is the non-discrimination principle here. But see, but that's not expressed discrimination. And that's what I was asking you about earlier, about if it were anybody but the United States, wouldn't it be clear that the state of Washington under its police power could do exactly what it contemplated here? Well, again, if Washington were regulating only private entities, it could, but it isn't. Here it is singling, it's specifically targeting the United States and singling it out. And that is not regulating in the same way and to the same extent as it regulates others. Well, let me, Your Honor. It is only private entity employees that are covered by this. Federal employees are covered by an entirely different system, the Federal Workers' Compensation system. Isn't that the case? Yes, Your Honor. But we're only talking about the employees of federal contractors. And the Supreme Court and this court have recognized that they essentially stand in the shoes of federal employees. The state can't discriminate against them as either. That's what this court held in the Boeing case, which involved federal contractors. But the problem seems to stem from the government's, or I guess DOE's, acceptance of responsibility. DOE is free to contract as it wants to with its contractors. If DOE doesn't want to be responsible, then it can enter into contracts with those private contractors that don't make it Well, Your Honor, DOE has entered into contracts. But the problem is that the state of Washington subsequently recently enacted this statute that essentially that discriminates against the federal government. And it requires the federal government to pay workers' compensation in a way that other Let me, you're hanging a lot on the same extent language. And there's a case that we did in 1999 in the United States v. Lewis County. And that had the same, it was a tax statute about taxing federal and state land. And the tax statute there was 7th United States Code, section 1984, had the same language. It said, quote, in the same manner, and to the same extent as other properties taxed. And it was Washington State again, I think. Washington taxed the federal farmland differently than the state farmland. And we said in that case, it undeniably discriminates against federal farmland, but it was okay, because Congress had waived the immunity principle. So how is that? I mean, how is that language any different from here? Well, Your Honor, the language might not be different, but the circumstances of the case were very different. And the reason, the only reason that that was permissible was because the court held that in this in the area of repossession and taxation, the state could accomplish that the state could tax entities and recover the funds that way. But that way, in order to create parity, it would have had to, the state, the state would have had to tax entities, and the court said that that was not necessary, because it was like, essentially in the same position as the- What I'm trying to get at is, you seem to be saying that the phrase same expense, somehow has an anti-discrimination principle inherently in it. But in this other case, we found that that wasn't true. So I'm just having a, just from a kind of statutory interpretation, I'm having trouble understanding how same extent does not mean one thing in one context, it means something different in another context. We usually don't interpret statutes to have different meanings like that. Well, Your Honor, we, again, we would respectfully disagree. We believe that the, that all that this statute contains the same type of non-discrimination principle as the other statutes do. And, and, and they're all, they're, they're all harmonious. But with effect, it doesn't, it doesn't. As Judge Delman implied there, the, in the taxes he talked about, there was nothing in there, but compare that to, say, CERCLA. Because CERCLA specifically calls out a limitation on doing something more stringent to the federal government than you would do with private sectors. That is an anti-discrimination clause that is expressly contained in the statute. And there's not one here, any more than there was one with respect to the tax statute that Judge Donato referred to. Why, why did, why, why don't we construe this as a waiver of intergovernmental immunity? Well, Your Honor, because one thing I, it has to be a clear and unambiguous waiver. And, and this certainly is not at the very least. And I would heart, I would heart back to the, again, to the Supreme Court, which recognized that there is a, a non-discrimination principle in this, in this statute. And, and it upheld, it, it upheld that the application of a state law only because it was generally applicable to others, as well as to the United States. So at the very least, Well, I mean, this is true. This is true. As Judge Clifton pointed out, if a, if the United States doesn't want to enter into a contract that was subjected to this, it simply would say to the contractor, look, you're going to indemnify us for all of this. We're not going to be responsible for any of it. What's the problem is that the United States shouldn't have to, because the state shouldn't, the state is not allowed to enact a statute like this in the first place. The, the, the, the statute is unconstitutional because it, because it subjects the United States to, to a special treatment. Do you want to save any of your time? You don't have to, but if you wish to. Yes, your honor. I, I, I certainly would. I would, I would appreciate that. Why don't you take some time then and we'll, we'll hear from Mr. Purcell. Thank you, your honor. May it please the court. I'm Washington Solicitor General Noah Purcell on behalf of the state. For decades, private employers operating Hanford have been exposing their workers to a toxic stew of hazardous substances, failing to monitor their exposures and failing to provide them with adequate protective gear. It's undisputed that if an employer engaged in the same type of conduct outside of Hanford, the state could adapt its workers' compensation laws to address those unique dangers. Under 40 U.S.C. 3172, the state has allowed- Let me stop you there. Let's get right to the issue, because I don't think there's any dispute that the state could do it for anybody in the area of something that applies only to federal contractors, not to people working for companies who aren't going to be indemnified by the federal government. And what's the justification for drawing the line there? You know, the legislature had eminently rational reasons for the lines that it drew in this statute. And in particular, the federal government has cited kind of two, what they call comparators. One is state inspectors. State inspectors are on the site for very limited periods. They're conducting very discreet tasks. They're not handling high-level radioactive waste. There's no evidence whatsoever that the state has failed to provide them with protective gear or monitor- Now, your own brief tells us that scientists have found that office workers of Hanford are at increased risk from exposure to dangerous substances. And the statute kicks in for somebody who's worked a single eight-hour shift. So I come back to the question, what's the rational basis for saying if the federal government's going to pony up the money, we'll have this presumption applied. But if the federal government isn't going to pony up the money, the presumption doesn't apply. And the only distinction I see there is where the money coming from aimed at the federal government. Judge Griffin, the state has exempted other federal employers that are not presenting the same risk, such as the Bonneville Power Administration, as the federal government acknowledges. So this is not just an effort to single out the federal government. This is an effort to target the people who have been becoming sick and whose employers have failed to monitor their exposures in such a way that it's very difficult for them to prove what exposures caused their illness. And the state has adopted very similar presumption law for land under its exclusive jurisdiction as the firefighters, who of course are primarily state and local employees. And for similar reasons, because the firefighters have to be dangerous working conditions and often can't demonstrate exactly what chemicals they were exposed to. And so here the state adopted a law, again, very similar to the firefighter presumption and for similar reasons. And I think it's undisputed at this point that the state could adopt such a law on land under its exclusive jurisdiction. And the state has done that here. And so this law is allowed under 3172. And under the Supreme Court's interpretation of that provision in Goodyear Atomic and this court's... Well, what are the limits though, counsel? Can Washington do anything under 3172? Let's say, for example, Washington decided that everybody at Hanford would get 20 times the amount per injury that the normal workers' comp statute would provide. Is that... I mean, you would seem to be arguing that that would be okay. Yeah, it'd be hard to defend that as rational. There's at least three important limitations on what the state can do under 3172. Let me just jump in. So it's rational because it's radioactivity and it has maybe a higher mortality rate because of cancers. I mean, you could come up with a whole bunch of rational reasons. So are you saying that as long as it's rational, Washington can say you have to pay 20 times more than anybody else in the state? Well, you're right. There are at least three important limitations on what the state can do. So first of all, 3172 is only a waiver as to workers' compensation law. So the state can't attempt to regulate something like wages or hours or rest breaks or something... I'm just talking about workers' compensation, that's all. And within the workers' compensation limited context, there's of course the Equal Protection Clause, the New Process Clause, both of which would protect private employers. And there's also, importantly, Your Honor, federal preemption. In virtually every one of the cases cited in the briefs, the federal government also argued federal preemption because there was a... Keep in mind that we're applying... What 3172 allows is application of state workers' compensation laws on federal work sites, which of course will typically be performing activities heavily regulated by the federal government. So the federal government will often have available an argument that the state law directly conflicts with the federal law or is an obstacle to some federal purpose. Here, the federal government has not made that argument, presumably because they don't think they could satisfy either of those standards, but that will be an important limitation on what a state could do. And here, of course, we're not just saying kind of hypothetically that a state could enact a law like this somewhere else. The state has actually done that as to firefighters. And under the other side's theory, the real problem, the real major problem, I think, is that there's nothing the state can do to address a particularly dangerous work site on federal land or particularly irresponsible employers, even though it's undisputed that the state could adapt its laws to address those situations on land under its exclusive jurisdiction. And as Judge Smith emphasized in his questions, it's clear that 3172 is a waiver of intergovernmental immunity, and the Supreme Court's decision in Goodyear Atomic emphasized that. If you look at the very first section of that opinion after the court addressed this jurisdiction, the court addressed the federal government's to a direct regulation of the federal government, which would normally be prohibited under the intergovernmental immunity doctrine. But the court said, we don't actually even need to decide if this is a direct regulation, because even if it is, it's allowed under 3172. And so here we have a waiver that allows the state to apply its laws in the same way and to the same extent as on land under its exclusive jurisdiction. And under the state's exclusive jurisdiction, the state can draw distinctions between employers under the rational basis test, as the US Supreme Court held in the Mountain Timber case. And I do think that, Judge Donato, your reference to the Lewis County case is particularly apt here as well, because that was, I think, a narrower waiver than is present in 3172. And still, this court said that that allowed for differential treatment between the federal government and the state and local governments. And again, this statute, I think, is a broader waiver. So I think for all those reasons... Your opponent thinks Lewis is apples and oranges. What's your response to that? I don't quite understand why, Your Honor. I mean, Lewis was a waiver statute that, like I said, I think was narrower than the one here. It did use the same manner and same extent language, but it said that the state can only tax federal property, quote, in the same manner and to the same extent as other property is taxed. So the comparator was how that other property actually is taxed. Here, the state can regulate as if the land were under the state's exclusive jurisdiction. So there's an even broader grant, I think, of authority to the state. And so I just don't understand why the federal government thinks Lewis County is beside the point here. I think it's very much on point. It's certainly more on point than the Bowen case. In the Bowen case, as Judge Smith emphasized, the statute very clearly said that the state could not apply any standard to a federal facility more stringent than apply to any other facility. And that is not at all what 3172 says. 3172 says we can regulate in the same way and to the same extent as the land were under our exclusive jurisdiction. And under our exclusive jurisdiction, workers' compensation laws, by their very nature, draw distinctions between employers all the time. Employers pay higher rates based on how risky their line of work is, based on their individualized history of workplace injuries and worker safety. And this law is really a difference of degree, not of kind, in taking that same approach that is aimed at making sure that employers are paying the cost of the workplace injuries and illnesses that their work causes. And it just recognizes the unique challenges that workers at Hanford face because the substances present there are present nowhere else. So they're very little studied, they're incredibly toxic, and the employers have just done a horrendous job of tracking exposures and providing protective gear. And so that it's very difficult for workers to prove causation under the standard that would normally apply, which means that those private employers are getting out of paying the real cost of the harms to their workers. So... Can I ask you this one thing that kind of troubled me? Your statute suggests, I guess it says, that even though someone has lost their unemployment case before, they can file again and re enter it with the benefit of the presumption. Are there any constitutional limitations on that? Your Honor, the federal government has not raised that argument. I suppose they can make some sort of as applied challenge, or a private employer could if they thought there was some unconstitutional aspect in a particular case. They certainly have not made that argument here. I think that's designed to reflect that many, many workers at Hanford have become sick, and even when they become immediately after working at Hanford, it's often difficult to show causation because there's no record of what they were exposed to. And even if there is, there's no studies about the exact nature of those chemicals or substances because they don't exist anywhere else. So the legislature adapted a very rational response to that problem, and trying to ensure that workers are able to be compensated for the injuries and illnesses they suffer at the Hanford site. And again, 3172 allows exactly that. So, Your Honors, again, I just wanna emphasize the points about Hanford, that it's a uniquely dangerous site, uniquely terrible history of worker safety and monitoring exposures and providing protective gear. And the state responded to that in a eminently rational way, which it's allowed to do under 3172. If the court has no other questions, we would just ask that you affirm the district court's judgment in this case. Any other questions from my colleague? I think not. Thank you, sir. Mr. Capel, let's hear your rebuttal. Thank you, Your Honor. There are several points that I would like to make. First of all, I would emphasize that this statute does not target hazardous waste, per se. This statute targets federal lands and federal contractors. It is not focusing on exposure of individuals to hazardous waste. It creates a wholesale presumption for any individual, an office worker, a construction worker, or anyone on the Hanford site who spent at least one eight hour shift there. It exempts state employees, State Department of Health and Department of Ecology employees who regularly conduct inspections at Hanford. I believe approximately 100 of them have badges that allow them regular access. And the presumption itself here is very different from the firefighter presumption, which only requires, I believe, 10 years of service before it kicks in. The presumption itself can be rebutted by a preponderance to the evidence rather than clear and convincing evidence, which is what is required here. But do you agree that rational basis is the key here? And if you do, what's irrational about what the state has done here? No, Your Honor. We absolutely do not agree that... We disagree strongly that rational basis is the key here. This is not a rational basis case. This is a case about singling out the United States for a disfavored treatment under a discriminatory statute that focuses exclusively on federal land facility and federal contractor employees. The state cannot regulate the United States in this fashion. Only the federal government can do so. And I'd also point out, as we mentioned in our reply brief, the federal government actually has in the Energy Employees Occupational Illness Statute, which sets out very different standards, such as, I believe, a 250 day minimum experience level to cover workers. So this is not a proper area of state regulation. Attorney... Your time is up. We'll give you just a little bit to wrap up. Thank you, Your Honor. Just very quickly, I'd say the key language in Lewis County is, we see no reason why state or local governments must engage in a circular process of taxing themselves in order to impose the tax on the federal government that Congress has authorized. So that's how it's distinguishable. The court was not requiring the state to engage in an unnecessary formality. In closing, I would emphasize once again that this statute impermissibly singles out the United States for disfavored treatment, and therefore violates the Supremacy Clause. And I rest on our briefs and declarations. Thank you, Your Honor. Very well. Thanks to both counsel for your arguments. We appreciate it very much. The case just argued is submitted. We'll take just a minute while we go to the next argument. Thank you, gentlemen. Thank you, Your Honor.
judges: Clifton, M. Smith, Donato